CHAISSON, J.,
dissents, in part, with reasons.
_JjI respectfully dissent from that portion of the majority opinion that affirms the amount of severance damages awarded for Parcel Two.

Parcel Two East

The trial court committed manifest error in awarding severance damages for any acreage in Parcel Two East, other than acreage which she determined suffered physical damage caused by the DOTD.
The evidence establishes that Parcel Two consists of 8,144.79 acres, of which 54.64 acres were taken in fee simple for the 1-310 corridor. Of the remaining *175 8,090.15 acres, 7,517.48 acres are west of the 1-810 corridor (Parcel Two West) and 572.38 are east of the 1-310 corridor (Parcel Two East). Additionally, the trial court held the DOTD liable for physical damage to only 109.26 acres of the remainder of Parcel Two. She described these 109.26 acres as “adjacent to the 1-310 roadway,” but did not further specify what portion of this acreage is on the west side of the 1-310 corridor and what portion is on the east side. Even if one gives the benefit of any doubt to the landowners, and assigns the location of all 109.26 physically damaged acres to Parcel Two East, the maximum number of acres remaining in Parcel Two West is 7,517.48 acres. Since the trial court found that 7,980.86 acres of Parcel Two suffered a diminution of value due to the loss of the market speculative component, it is clear that at least 463.38 of these diminished-value acres are in Parcel Two East. There is no reasonable factual basis in the record to support this finding.
^Although Bennett Oubre, the landowner’s appraiser, testified that access points to Parcel Two East were diminished due to control of access along Airline Highway, he acknowledged that Parcel Two East still continues to have access to Airline Highway. He further testified that the highest and best use of Parcel Two East, which included a market speculative component, did not change after the taking. This is consistent with his findings regarding access issues and severance damages as to Parcel One East.
Parcel One East is also located on the east side of the 1-310 corridor and is defined as being separated from Parcel Two East by the Hurricane Protection Levee. No portion of the 1-310 corridor taken in fee simple separates Parcel One East from Parcel Two East, and therefore the 1-310 project in no way affects the public rights-of-way running between Parcel One East and Parcel Two East. The access points to Airline Highway for Parcel Two East are the identical access points to Airline Highway that Parcel One East enjoys. The landowners did not request, and the trial court did not award, any severance damages for Parcel One East. It is inconsistent to award severance damages in Parcel Two East due to alleged diminished access points when those identical access points do not justify severance damages for Parcel One East. I believe that it was manifest error for the trial court to award severance damages (other than for physically damaged acres), for Parcel Two East.

Parcel Two West

The trial court also committed manifest error in setting the low end of her after-taking valuation range in Parcel Two at $300.00 per acre.
Mr. Oubre testified that the value of the 90.9 acres taken in fee simple in Parcel Three was $500.00 per acre. Mr. Oubre acknowledged that the highest and best use of this acreage is recreational wetland and mineral production, but justified a valuation higher than the DOTD’s experts based upon its proximity to |aLake Pontchartrain and theoretical access by boat and along the ICG Railroad. The trial court accepted Mr. Oubre’s valuation and awarded the landowners $500.00 per acre for this 90.9 acre tract.
The 90.9 acres taken in Parcel Three is located at the I-310/I-10 interchange, a large portion of which is sandwiched between the ICG Railroad and 1-10. The trial court defined the property at the low end of her valuation range in Parcel Two as “that portion nearest to the railroad right-of-way.” As can be seen from the various maps introduced into evidence, because the ICG Railroad runs on a diagonal through the property, a vast area of Parcel Two is much closer to Lake Pontchartrain than the 90.9 acres taken in Parcel Three. Because the trial court’s third sub-parcel *176 of Parcel Two adjoins the ICG Railroad, it enjoys the same access along the railroad tracks that the 90.9 acres in Parcel Three enjoys. The various bayous and canals, as shown on the maps, allow access for recreational use purposes. The maps also show that recreational users can access Parcel Two West via the East Guide Levee of the Bonne Carre Spillway. There is no reasonable factual basis for the trial court to value the 90.9 acres of recreational wetlands taken in Parcel Three at $500.00 per acre and value the portion of recreational wetlands in Parcel Two West nearest the ICG Railroad, after the taking, at $300.00 per acre. A consistent finding of no less than $500.00 per acre for the recreational wetlands in Parcel Two West after the taking would result in a lesser diminishment from its pre-taking value and a lower award in severance damages.
Finding that the trial court committed manifest error in her determinations regarding severance damages in Parcel Two, it is appropriate for this Court to reduce the amount of severance damages awarded. Finding such, it is also appropriate to reduce the total amount of attorney fees awarded accordingly.
In all other respects, I agree with the opinion of the majority.